UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MOSHE WAGH,                                              :
                                                        :        18-CV-7726 (RWL)
                                    Plaintiff,           :
                                                        :
                      - against -                       :        **ORDER**
                                                        :
ROBERT L. WILKIE, JR., *in his official*                :
*capacity as Secretary of Veteran Affairs*              :
                                                        :
                                    Defendant.          :
                                                        :
------------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Attached for the parties' consideration are the Court's draft jury instructions and

voir dire.  In formulating these materials, the Court has considered the parties' proposals

previously submitted.  These materials will be discussed at the pretrial conference.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        October 21, 2021

Copies transmitted this date to all counsel of record.

1

**aUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

MOSHE WAGH,

                        Plaintiff,

           -against-

ROBERT L. WILKIE, JR., in his official capacity
as Secretary of Veterans Affairs,

                        Defendant.
----------------------------------------------------------------X

**18 Civ. 7726 (RWL)**

**JURY VOIR DIRE**

## Background

This is a civil employment discrimination case brought under Title VII of the Civil Rights Act.  The plaintiff is Moshe Wagh.  He is an anesthesiologist.  The defendant is the U.S. Department of Veterans Affairs, also commonly known as the VA . Dr. Wagh claims that beginning in 2017 the VA discriminated against him in determining his salary because of his religion.   Specifically Dr. Wagh, an Orthodox Jew, claims that his religion was a motivating factor in the VA's setting of his pay as compared to anasthesiologists who were not Orthodox Jews.  The VA contends that it did not discriminate against Dr. Wagh and that his salary had no relationship to his religion.

## Knowledge Of Parties And Witnesses (To The Panel)

1.      Do any of you have any personal **knowledge of the allegations** in the case as I have described them?

2.      Do any of you know, have you heard or read anything about, or have you had any relationship with, the plaintiff **Dr. Moshe Wagh**, or any of his relatives or friends?

3.      Do any of you know, or have you heard or read anything about, or have you had any relationship with, the **James J. Peters VA Medical Center**?

4.      Have you or anyone you know had any relationship with the **United States Department of Veterans Affairs**, commonly called the VA?

5.      Have any of you ever read anything in the newspaper or seen anything on television or the internet regarding the VA that may affect your ability to be a fair and impartial juror?

6.      Dr. Wagh is represented by **Corey Stark** of the law firm Corey Stark PLLC.  Do any of you know, have you heard about, or have you or anyone you know had any interaction with Mr. Stark?

7.      The VA is represented by the **United States Attorney** for the Southern District of New York, Damian Williams. The trial will be conducted by Assistant United States Attorneys Jennifer Jude and Kirti Vaidya Reddy and by paralegal Stephanie Brown.  Do any of you know, have heard of, or have you had any interaction with Ms. Jude, Ms. Reddy, or Ms. Brown?

8.      Have any of you or anyone close to you ever had any interaction with the U.S. Attorney's Office for the Southern District of New York?

9.      Do any of you know, or have you heard anything about, any of the following individuals who may be **witnesses** in this case, or who may be mentioned during trial? Their names are:

- •      Dr. Sarah Garrison;
- •      Dr. Andrew Schwartz;
- •      Dr. Eric Langhoff;
- •      Dr. Joanna Miller;
- •      Madeline Eydt;
- •      Dr. Jeffrey Fried;
- •      Dr. Adrienne Gleit;

- Dr. Mark Trentalange;

- Dr. Steven Boggs;

- Dr. James Chein;

- Dr. Nancy Lee;

- Dr. Andrew Goldberg;

- Dr. Rinaldi Guzman;

- Dr. Sandra Soler; and

- Arleen L. Romba.

### Ability to Follow the Proceedings (To The Panel)

10.    Do any of you have any problem hearing or seeing, or any problem reading, speaking or understanding the **English** language?

11.    Do any you have any **medical**, physical or psychological condition that would make it difficult for you to serve as a juror?

12.    Do any of you have any **specific problems** at home or at work that might interfere with your ability to concentrate on the case during trial?

### Ability to Render an Impartial Verdict Generally (To The Panel)

13.    Given the nature of the allegations in this case, does anyone believe that he or she could not be a **fair and impartial** juror?

14.    It is important that you keep an open mind throughout trial.  Does anyone believe that they will not be able to **keep an open mind** about this case

until hearing all of the evidence, the arguments of both sides and the instructions on the law I will give?

15.     Dr. Wagh and the VA are **entitled to the same** impartial treatment by you as jurors.  Will anyone's judgment in this trial be affected by the fact that the plaintiff is an **individual** and the defendant is an agency of the **federal government**?

### Ability to Apply the Law as Given by the Court (To The Panel)

16.     Under our system of justice, for the claims that are being submitted to a jury, the decisions concerning the facts of the case are the responsibility of the jury, and decisions concerning the law are the responsibility of the Court. Those responsibilities are separate. At the close of this trial, I will instruct you as to the law that you are to apply and you are required to accept it as stated. With this in mind, do any of you feel that for any reason you may not be willing or may not be able to **apply the law as instructed by me**?

17.     Do any of you believe that you would not be able to follow my instructions regarding the law to be applied even **if you disagreed** with my instructions or felt that the law ought to be something different from what I tell you?

18.     I will be instructing you that **sympathy** must not enter into your deliberations – do any of you believe you will not be able to follow that instruction?

### Personal History

19.     What is your **educational** background?

5

20.     What **neighborhood** or area do you live in?

21.     Do you have any friends or relatives who are **lawyers** or who work for lawyers? Do any of these people work on employment discrimination cases?

22.     Are you married or in a civil partnership? What does your **spouse/partner** do for a living?

23.     Do you have any grown **children**? What do they do for a living?

24.     Have you, or has any member of your family or any close personal friend, ever served in the **military**? Did you, or they, receive any medical treatment from a physician employed by the VA?

25.     What do you **watch or read** for pleasure?

26.     What **hobbies** or interests do you pursue in your free time?

27.     Have you, or has any member of your family or a close personal friend, ever been involved in **litigation** or filed or defended against a claim or lawsuit of any sort?

28.     Have you ever been a **witness** in a lawsuit before?

29.     Have you ever served on a **jury** before?

30.     Do you have any opinions about Jewish people in general or Orthodox Jews in particular?  Would those views affect your ability to decide this case in a fair and impartial manner?

## Employment And Pay

31.     Where do you **work** now, or what was your last job?

32.     How long have you been (were you) employed at that job?

33.     What do you do?

34.     If you are self-employed, what is the nature of your business?

35.     Have you or your spouse/partner had to take any examinations to become **certified or licensed** in your line of work?

36.     Do you have any education or training with respect to, or professional experience with, **human resource issues**, equal employment opportunity, or affirmative action?

37.     Have you ever been involved in **decisions about the amount of wages or salary** to pay another person?

38.     Have you ever been in a job and **felt that you were treated unfairly** with regard to how much you were paid?  Has a family member or close friend had such an experience?

39.     Have you, or has any member of your family, received **less pay than someone more junior**?.

40.     Have you, or has any member of your family or any close friend, ever filed a **grievance or lawsuit** against an employer?

### Employment Discrimination

41.     Do you have any feelings or opinions about **discrimination lawsuits** generally?

42.     Have you ever had **allegations of discrimination** made against you?

43.     Has any member of your family or a close personal friend ever had allegations of discrimination made against them?

44.     Have you or has any member of your family or close personal friend ever witnessed or **experienced discrimination in the workplace**?

45.     Have you, or has any member of your family or close personal friend ever made an informal or formal **complaint** of discrimination?

46.     Have you ever **provided testimony** about any informal or formal complaint of discrimination?

47.     Have you ever served as a **counselor or an investigator** in an employment discrimination case?

## **Concluding Questions**

48.     Is there **any matter not covered** by my questions that should be brought to my attention because it would affect your ability to sit as a juror in this case and to render an impartial verdict?

49.     Do you know of any reason why you should not be a juror in this case?


SO ORDERED.


_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

MOSHE WAGH,                                     18 Civ. 7726 (RWL)

                                 Plaintiff,

                -against-

DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

                                 Defendant.
-----------------------------------------------------------------X

**JURY INSTRUCTIONS**

# TABLE OF CONTENTS

A.  Pre-Trial Instructions ................................................................................................ 1

    1.   Jury Instruction No. 1 (Introduction to the Case) ............................................. 1
    2.   Jury Instruction No. 2 (Order of Trial) ............................................................. 2

B.  Pre-Trial (Except No. 3) And Pre-Deliberation Instructions — General .................... 3

    3.   Jury Instruction No. 3 (Introduction) ............................................................... 3
    4.   Jury Instruction No. 4 (Impartiality) ................................................................. 4
    5.   Jury Instruction No. 5 (Jury Function) ............................................................. 5
    6.   Jury Instruction No. 6 (Court's Function) ........................................................ 6
    7.   Jury Instruction No. 7 (Evidence) .................................................................... 7
    8.   Jury Instruction No. 8 (Weighing Testimony) ................................................ 10
    9.   Jury Instruction No. 9 (Credibility of Witnesses) ........................................... 11
    10. Jury Instruction No. 10 (Interested Witnesses) ............................................. 13
    11. Jury Instruction No. 11 (Sympathy) ............................................................... 14
    12. Jury Instruction No. 12 (Impeachment) ......................................................... 15
    13. Jury Instruction No. 13 ( Parties Equal Under The Law) ............................... 16
    14. Jury Instruction No. 14 (Evidence—Reasonable Inferences) ....................... 17
    15. Jury Instruction No. 15 (Direct Evidence and Circumstantial Evidence) ........ 18
    16. Jury Instruction No. 16 (Burden of Proof—Preponderance of the Evidence) 19

C.  Pre-Deliberation Instructions — Substantive ........................................................ 21

    17. Jury Instruction No. 17 (The Relevant Statute) ............................................ 21
    18. Jury Instruction No. 18 (The Pay Act) ........................................................... 22
    19. Jury Instruction No. 19 (Disparate Treatment—Pretext) .............................. 24
    20. Jury Instruction No. 20 (Deviation from Normal Policy, Practice, or Rules)... 26
    21. Jury Instruction No. 21 (Similarly Situated) .................................................. 27
    22. Jury Instruction No. 22 (Comments) .............................................................. 28
    23. Jury Instruction No. 23 (Plaintiff's Subjective Beliefs) .................................. 30

D.  Pre-Deliberation Instructions — Damages ............................................................ 31

    24. Jury Instruction No. 24 (Damages—General) ............................................... 31
    25. Jury Instruction No. 25 (Compensatory Damages) ....................................... 32
    26. Jury Instruction No. 26 (Nominal Damages) .................................................. 33

E.  Pre-Deliberation Instructions — Concluding ......................................................... 34

    27. Jury Instruction No. 27 (Duty to Deliberate) ................................................. 34
    28. Jury Instruction No. 28 (Foreperson and Return of Verdict) ......................... 35

DRAFT October 21, 2021

**PRE-TRIAL INSTRUCTIONS**

**Jury Instruction No. 1**
**(Introduction to the Case)**

Members of the jury, we are about to begin the trial of the case that you heard about during jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

This is a civil lawsuit brought by the plaintiff, Dr. Moshe Wagh, against the defendant, Denis McDonough, in his official capacity as Secretary of Veterans Affairs.  At all times relevant to this lawsuit, Dr. Wagh was employed by the James J. Peters VA Medical Center, which is a part of the Department of Veterans Affairs.  During the trial the Department of Veterans Affairs may be referred to as the "VA."  The James J. Peters VA Medical Center may be referred to as the "Bronx VA."

Dr. Wagh, an Orthodox Jew, claims that the VA discriminated against him because of his religion.  Specifically, Dr. Wagh claims that his religion was a substantial or motivating factor in determining his pay as compared to the pay of other anesthesiologists.  Dr. Wagh brings his claim under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e et seq., which is generally referred to as "Title VII."

The VA denies these allegations and contends that it had legitimate, non-discriminatory reasons for the salary it paid Dr. Wagh.

DRAFT October 21, 2021

## Jury Instruction No. 2
### (Order of Trial)

The case will proceed as follows:

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, if any, Dr. Wagh will present evidence in support of his claims and the VA's lawyers may cross-examine witnesses.  In this case, Dr. Wagh and the VA intend to call some of the same witnesses, though these witnesses will generally only be called once, for their convenience and yours.

At the conclusion of Dr. Wagh's case, the lawyers for the VA may introduce evidence and Dr. Wagh's lawyer may cross-examine any remaining witnesses.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it is difficult and time-consuming for the reporter to read back lengthy testimony.  I urge you to pay close attention to the testimony as it is given.

**PRE-TRIAL (Except No. 3) AND PRE-DELIBERATION INSTRUCTIONS—GENERAL**

**Jury Instruction No. 3**
**(Introduction)**

Members of the jury, we come now to that portion of the trial where you are instructed on the law applicable to the case and you then retire for your final deliberations. You have now heard all the evidence introduced by the parties, and through arguments of their attorneys you have learned the conclusions that each party believes should be drawn from the evidence presented to you. This charge is divided into roughly two parts: the first part consists of general principles of law applicable to all civil cases; the second part consists of charges directed specifically to the law you must follow in this case.

**Jury Instruction No. 4**
**(Impartiality)**

A lawsuit is a civilized method of determining differences between people.  It is basic to the administration of any system of justice that the decision on both the law and the facts be made fairly and honestly.  You, as the jurors, and I, as the judge presiding over this matter, have a heavy responsibility—to assure that a just result is reached in deciding the differences between the plaintiff and the defendant in this case.

DRAFT October 21, 2021

**Jury Instruction No. 5**
**(Jury Function)**

As the jurors, your fundamental duty is to decide, from all the evidence that you have heard and the exhibits that have been submitted, what the facts are.  You are the sole, exclusive judges of the facts: you pass judgment upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

DRAFT October 21, 2021

**Jury Instruction No. 6**
**(Court's Function)**

On the other hand, and with equal emphasis, you are required to accept the law as it is given to you in this charge and in any charges that I have given to you during the course of the trial.  Whether you agree with the law as given to you by me or not, you are bound by it.  The process by which you arrive at a verdict is, first, to decide from all of the evidence and the exhibits what the facts are; and second, to apply the law as I give it to you, to the facts as you have decided them to be.  The conclusion thus reached will be your verdict.

## Jury Instruction No. 7
### (Evidence)

The evidence in this case consists of the following:

1.      The sworn testimony of the witnesses, regardless of which side called the witness.

2.      All exhibits received in evidence, regardless of which side produced the exhibit.

3.      Any factual stipulations that you must take as true for purposes of this case. A "stipulation" is an agreement between both sides that a particular fact is true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

4.      Any facts or events I take judicial notice of must also be taken as true for purposes of this case. If I have taken notice of or accepted facts true, even though no direct evidence has been introduced proving them to be true, you shall accept facts that I take judicial notice of as true in reaching your verdict.

5.      Deposition testimony may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. Deposition testimony may be accepted by you, subject to the same charges that apply to witnesses testifying in open court.

By contrast, the statements and arguments of the lawyers are not evidence in the case. At times, a question asked on cross-examination may have incorporated a statement which assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of the statement, and if there is no direct evidence in the record proving the assumed facts to be true, then you may not consider them to be

true simply because it was contained in the lawyer's question.  An example of this would be the following question regarding the weather: "When did it stop raining?"  You would not be permitted to consider as true the assumed fact that it was raining, unless the witness herself or himself had indicated it was raining, or unless there was some other evidence in the record that it was raining.

If I sustain an objection to any evidence, or if I order evidence to be stricken, that evidence must be completely ignored.  Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain evidence was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

Counsel's objections are not evidence but only statements of their clients' legal positions, and they, too, should be ignored unless sustained by evidence.

You are to consider only the evidence in the case.  But in your consideration of the evidence, you are not limited to statements of a particular witness.  In other words, you are not limited solely to what you saw and heard as the witnesses testified.  From the facts that you find have been proved, you may draw such reasonable inferences or conclusions as you feel are justified in light of your experience and evaluation.

Arguments by the attorneys are not evidence.  What the attorneys have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that must govern.

Exhibits that have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the Court.  Exhibits

marked for identification but not admitted are not evidence, nor are materials brought out only to refresh a witness's recollection.

Finally, statements that I may have made concerning the evidence are not evidence.

**Jury Instruction No. 8**
**(Weighing Testimony)**

The law does not, however, require you to accept all of the evidence that I have admitted.  In deciding what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and decide how much weight to give to that testimony.  The testimony of a witness may not conform to the facts as they occurred because he or she is intentionally lying, because the witness did not accurately see or hear what he or she is testifying about, because the witness's recollection is faulty, or because the witness has not expressed himself or herself clearly in testifying.  There is no magic formula by which you should evaluate testimony.  You bring with you to this courtroom all of the experience and background of your lives.  In your everyday affairs you decide for yourselves the reliability or unreliability of things people tell you.  The same tests that you use in your everyday dealings are the tests you should apply in your deliberations here—the interest, or lack of interest, of any witness in the outcome of this case; the bias or prejudice of a witness, if there be any; the appearance, the manner in which the witness gives testimony on the stand; the opportunity that the witness had to observe the facts about which he or she testifies; the probability or improbability of the witness's testimony when considered in the light of all of the other evidence in the case— all are things to be considered by you in deciding how much weight, if any, you will give to that witness's testimony.  If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy can be reconciled by fitting the two stories together.  If, however, that is not possible, you will then have to decide which of the conflicting stories you will accept.

10

**Jury Instruction No. 9**
**(Credibility of Witnesses)**

In deciding what the facts are in this case, you must consider all the evidence that has been offered.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  Your determination of the issue of credibility will depend upon the impression that a witness made upon you as to whether or not that witness was telling the truth or giving you an accurate version of what occurred.  You may choose to disbelieve all or part of any witness's testimony.  Often it is not what a person says but how he or she says it that moves us.  In making that decision, you may take into account any number of factors, including the following:

- The witness's opportunity to see, hear, and know about the events he or she described;

- The witness's ability to recall and describe those things;

- The witness's manner in testifying— was the witness candid and forthright or did the witness seem as if he or she was hiding something or being evasive or suspect in some way;

- How the witness's testimony on direct examination compared with the witness's testimony on cross-examination;

- The reasonableness of the witness's testimony in light of all the other evidence in the case;

- The witness's intelligence, the reasonableness and probability of his or her testimony, and its consistency of lack of consistency, and whether it is corroborated by other credible testimony;

- Whether the witness has any possible bias, any relationship to a party, any hostility towards any party, any motive to testify falsely, or any possible interest in the outcome of the trial; and

11

- Whether a witness's testimony was contradicted by his or her other testimony, the testimony of other witnesses, or other evidence.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit testimony. In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or part, you may disregard the particular part you find to be false or you may disregard the witness's entire testimony as not worthy of belief.

It is entirely within your discretion to weigh the relative truth and falseness of any witness's testimony, to determine the weight to be given to the testimony as a whole, and to judge the credibility of the witness.

**Jury Instruction No. 10**
**(Interested Witnesses)**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case, which may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that a witness may have an interest in the outcome of this trial, then you should bear that fact in mind when evaluating the credibility of his or her testimony and accept it with great care.  Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

13

DRAFT October 21, 2021

**Jury Instruction No. 11**
**(Sympathy)**

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and to reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at a just verdict.

**Jury Instruction No. 12**
**(Impeachment)**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony. I must warn you that the testimony of any witness who you find did previously and deliberately lie under oath should be viewed cautiously and weighed with great regard and care.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness as little credibility (or as much) as you may think the witness deserves.

If a witness is shown "knowingly" to have testified falsely, or to have rendered false sworn statements concerning any matter germane to any issue before you, you have a right to distrust such witness's testimony in other areas too. And you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

DRAFT October 21, 2021

**Jury Instruction No. 13**
**(Parties Equal Under The Law)**

The U.S. Department of Veterans Affairs is not a natural person.  On the contrary, Dr. Wagh is a natural person.  Despite the obvious differences between them, they are equal in every way under the law.  Dr. Wagh is not to be favored or disfavored because he is an individual; nor is the VA to be favored or disfavored because it is a government entity.  All are entitled to the same fair trial at your hands.  They stand equal before the law, and are to be treated as equals.  This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

**Jury Instruction No. 14**
**(Evidence – Reasonable Inferences)**

You are to consider only the evidence in the case, but in your consideration of the evidence you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw reasonable inferences based on facts that you find have been proved.

Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.  Inferences are not, however, guesswork made without a reasonable basis in the evidence.  In drawing inferences, you should exercise your common sense.  So, while you are considering the evidence presented to you, you are permitted to draw, from the facts you find to be proven, any reasonable inferences that you think are justified in light of your common sense and life experiences.

DRAFT October 21, 2021

**Jury Instruction No. 15**
**(Direct Evidence and Circumstantial Evidence)**

In rendering your verdict, you are to consider both direct and circumstantial evidence in reaching your verdict.  One kind of direct evidence is witnesses' testimony about something they know by virtue of their own senses—something they have seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else then walks in with a raincoat that is also dripping wet.  You cannot look outside the courtroom and see whether or not it is raining, so you have no direct evidence of that fact.  Yet on the combination of the facts I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or the non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

18

**Jury Instruction No. 16**
**(Burden of Proof – Preponderance of the Evidence)**

The Plaintiff, Dr. Wagh, must prove his case by a preponderance of the evidence. To establish a claim "by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means that there is evidence that, when considered and compared with the evidence opposed to it, produces in your minds the belief that what is sought to be proved is more likely true than not true.

A preponderance of the evidence means the greater weight of the evidence.  It does not mean the greater number of witnesses for each side or the greater length of the time taken by either side.  Instead, you must make this determination based on the quality and persuasiveness of the evidence—the weight and effect it has on your minds.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is in balance or evenly divided between the parties—in other words, that it is equally probable that one side is right as it is that the other side is right—or that the evidence produced by the party having the burden of proof is outweighed by evidence against his or her claim, then you must decide that issue against the party having the burden of proof  So long as you find that the scales tip, however slightly, in favor of the Plaintiff—that what he claims is more likely true than not true—then the element will have been proved by a preponderance of the evidence.

19

Some of you may have heard of proof "beyond a reasonable doubt," which is the proper standard in a criminal trial.  That requirement does not apply to a civil case such as this, and you should put it out of your mind.

**PRE-DELIBERATION INSTRUCTIONS—SUBSTANTIVE**

**Jury Instruction No. 17**
**(The Relevant Statute)**

Dr. Wagh's claim of employment discrimination is brought under a federal law known as Title VII of the Civil Rights Act of 1964.  Title VII provides that it shall be an unlawful employment practice for an employer to discriminate against individuals with respect to their compensation, terms, conditions, or privileges of employment, because of such individuals' religion.

Title VII provides for claims against an employer—not the individuals alleged to have acted in a discriminatory manner.  As a result, in this case, Dr. Wagh's Title VII claim is against Denis McDonough, as the head of the Department of Veterans Affairs, based on the alleged discriminatory actions of decision-makers at the Bronx VA.

## Jury Instruction No. 18
### (The Pay Act)

Dr. Wagh alleges that the VA intentionally discriminated against him in setting his pay based on his religion.  Before instructing you further about what Dr. Wagh must prove to establish his claim, it is important for you to understand the statutory framework by which the VA sets salaries for doctors practicing at VA facilities.  I will refer to that framework as the Pay Act.  To be clear, however, you will not be determining if the VA violated the Pay Act.  Rather, your task is to determine whether the VA discriminated against Dr. Wagh on the basis of his religion.

According to the Pay Act, total pay ("Total Pay") for physicians practicing within the VA consists of three elements: (1) Base Pay; (2) Market Pay; and (3) Performance Pay.

Base Pay is controlled by a schedule that designates fifteen "steps" of base pay. The amount of Base Pay payable to a physician "is based on the total number of the years of the service of the physician … in the Veterans Health Administration …."  A physician's Base Pay is increased every two years, and reaches its maximum after a physician has served the Veterans Health Administration for more than 28 years.

Unlike Base Pay, the amount of Market Pay is discretionary.  Market Pay is "pay intended to reflect the recruitment and retention needs for the specialty or assignment … of a particular physician … in a facility of the Department of Veterans Affairs."  A physician's Market Pay is determined on a "case-by-case basis," and takes the following factors into account: (1) "the level of experience of the physician … in the specialty or assignment of the physician …"; (2) "the need for the specialty or assignment of the physician … at the medical facility of the Department concerned"; (3) "the health care labor market for the specialty or assignment of the physician … which may cover any

geographic area the Secretary considers appropriate for the specialty or assignment"; (4) "the board certifications, if any, of the physician"; (5) "the prior experience, if any, of the physician … as an employee of the Veterans Health Administration"; and (6) "such other considerations as the Secretary considers appropriate."  Market Pay must be evaluated "not less often than once every 24 months."  Such adjustment cannot result in a reduction of Market Pay for a physician who retains his current position "unless there is a change in board certification or reduction of privileges."

The third pay element, "Performance Pay," is determined "on the basis of the physician's … achievement of specific goals and performance objectives prescribed by the Secretary."  The amount of Performance Pay in a given fiscal year "may not exceed the lower of" either $15,000 or 7.5% of the sum of the Base Pay and Market Pay payable to the physician who will receive it.

**Jury Instruction No. 19**
**(Disparate Treatment—Pretext)**

In this case Dr. Wagh alleges that the VA paid him less in the Market Pay component of his compensation than similarly situated anesthesiologists at the Bronx VA. In order for Dr. Wagh to recover on this discrimination claim, he must prove that the VA intentionally discriminated against him in setting his pay.  This means that Dr. Wagh must prove that his religion—Orthodox Judaism—was a substantial or motivating factor in the VA's decision to set his compensation as it did.

To prevail on this claim, Dr. Wagh must prove both of the following by a preponderance of the evidence:

First: that the VA set the Market Pay component of Dr. Wagh's compensation at an amount less than similarly situated anesthesiologists at the Bronx VA; and

Second: that Dr. Wagh's religion was a substantial or motivating factor in the VA's decision, even if other factors also motivated the decision.

Although Dr. Wagh must prove that the VA acted with the intent to discriminate, he is not required to prove that the VA acted with the particular intent to violate his federal civil rights.  Moreover, Dr. Wagh is not required to produce direct evidence of intent, such as statements admitting discrimination.  Intentional discrimination may be inferred from the existence of other facts.  You should weigh all the evidence received in the case in deciding whether the VA intentionally discriminated against Dr. Wagh.

The VA alleges that it has a nondiscriminatory reason for its compensation decision: specifically, that it paid all anesthesiologists at the Bronx VA the same total salary, with an adjustment for doctors who are, or are not, board-certified in their specialty. If you believe the VA's stated reason and that Dr. Wagh's religion was not a substantial

24

or motivating factor in setting his pay, then you must find for the VA.  If you disbelieve the VA's stated reason for its conduct and believe that Dr. Wagh's religion was a substantial or motivating factor in setting his pay, then you must find for Dr. Wagh.

In determining whether the VA's stated reason for its actions was genuine or instead a pretext, or excuse, for discrimination, you may not question the VA's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of the VA or believe it is harsh or unreasonable.  You are not to consider the VA's wisdom.  However, you may consider whether Dr. Wagh has proven that the VA's reason is merely a cover-up for discrimination.

Ultimately, you must decide whether Dr. Wagh has proven that his religion was a substantial or motivating factor in the VA's decision to set his compensation in the way it did.

**Jury Instruction No. 20**
**(Deviation from Normal Policy, Practice, or Rules)**

To the extent you conclude that the VA departed from any established policy, practice, or rule, you may, or may not, conclude that this is evidence that the VA's stated reasons for setting Dr. Wagh's compensation as it did are pretextual. For example, Dr. Wagh has argued that the VA did not follow the VA Pay Act, because it did not consider all of the Market Pay factors listed in that Act. However, the mere fact that the VA may have not followed a particular practice, procedure, or rule does not prove that its actions with respect to Dr. Wagh were discriminatory. The ultimate issue for you to decide in this case is not whether the VA violated the Pay Act, but instead whether it discriminated against Dr. Wagh because of his religion.

**Jury Instruction No. 21**
**(Similarly Situated)**

Dr. Wagh must first prove by a preponderance of the evidence that he was paid less than other individuals to whom he was "similarly situated" in all material respects.  In determining if individuals are similarly situated, you can consider whether the employees share the same level of education, seniority, job performance, specific work duties, skill, effort, responsibility, background, and qualifications.  Dr. Wagh does not need to show he was identical in all respects to those to whom he seeks to compare himself.  But it is also not enough to show that he simply shared the same job title.  Your inquiry should focus on job content, and the similarity of the work performed.

**Jury Instruction No. 22**
**(Comments)**

To support his claim of discrimination, Dr. Wagh may use evidence of comments made by a person involved in a particular decision that reflect stereotyped views or bias. However, in order to prove discrimination by reference to comments in the workplace, Dr. Wagh must demonstrate that a connection exists between the comments made and the VA's decision to pay him disparate wages.

While you are reviewing any such statements, you may consider: (1) who made the remark—that is, a decision-maker or non-decision-maker, a supervisor or a low-level employee; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark—that is, whether the remark could reasonably be viewed as discriminatory; (4) whether the remark was religion-neutral—meaning it could apply equally to employees regardless of religion; and (5) the context in which the remark was made—that is, whether it was related or unrelated to the decision at issue. You may also consider who the statements were made about or directed against. These are all factors you may consider in deciding what "weight" or importance you will attach to these statements.

Isolated, sporadic remarks about a person's religion—even derogatory remarks or remarks made in poor taste—are not enough, on their own, for Dr. Wagh to meet his burden of proof showing that the employment action was taken against him because of his religion. You should consider such remarks in the context of all the evidence—the more remote and oblique the remarks are in relation to any alleged adverse employment action, the less they prove that the action was motivated by discrimination. The closer

the relationship of the statements to the VA's decision regarding Dr. Wagh's wages, the more they suggest that the action may have been motivated by discrimination.

DRAFT October 21, 2021

**Jury Instruction No. 23**
**(Plaintiff's Subjective Beliefs)**

Dr. Wagh's own subjective belief that he was discriminated against is not sufficient to meet his burden of proof.  It is not enough for Dr. Wagh to show his subjective belief, feelings, suspicions or speculation that the legitimate reasons stated by VA decision-makers were not genuine. It also is not enough for Dr. Wagh to show personality conflicts with or dislike by his supervisors or co-workers.

The burden in this case is on Dr. Wagh to prove by a preponderance of the evidence that the VA intentionally discriminated against him because of his religion.

**PRE-DELIBERATION INSTRUCTIONS—DAMAGES**

**Jury Instruction No. 24**
**(Damages—General)**

If you find that Dr. Wagh has proven by a preponderance of the evidence that the VA discriminated against Dr. Wagh because of his religion in setting his compensation, then you must determine the damages to which he is entitled.  However, you should not infer that Dr. Wagh is entitled to recover damages merely because I am instructing you now on the elements of damages.  I am instructing you on damages only so that you will have guidance should you decide that Dr. Wagh is entitled to recovery.

DRAFT October 21, 2021

**Jury Instruction No. 25**
**(Compensatory Damages)**

If you find that the VA discriminated against Dr. Wagh because of his religion in setting his compensation, then he is entitled to just and fair compensation in the form of damages.  One component of damages is economic damages in the form of lost wages or benefits.  The determination of economic damages will be calculated by the Court and not by you, and I will not ask you to quantify those damages.  Another component of damages is called compensatory damages, which is compensation for any non-economic injuries Dr. Wagh experienced as a result of the VA's unlawful conduct, including humiliation, emotional trauma, and mental suffering and anguish.  Collectively, these are referred to as emotional distress.  In the event you find liability, you will then quantify Dr. Wagh's damages for emotional distress.

In determining the amount of emotional distress damages, it may be impossible for you to arrive at a precise award.  These damages are intangible, and it is difficult to arrive at a precise evaluation of actual damage for emotional harm from discrimination.  No opinion of any witness is required as to the amount of such reasonable compensation.  Nonetheless, it is necessary to arrive at a reasonable award that is supported by the evidence.  In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  There is no exact standard for fixing the compensation to be awarded.  Any award you make should be fair in light of the evidence presented at trial.

### Jury Instruction No. 26
### (Nominal Damages)

If you find, after considering all the evidence presented, that the VA discriminated against Dr. Wagh because of his religion in setting his pay, but you also find that Dr. Wagh suffered no emotional distress as a result of that discrimination, you may award Dr. Wagh "nominal damages."  "Nominal damages" are awarded as recognition that a plaintiff's rights have been violated even if they did not incur a compensable harm.  You would award nominal damages if you conclude that the only injury that Dr. Wagh suffered was the deprivation of his rights, without any resulting emotional distress injury.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and emotional distress damages to Dr. Wagh; either he was measurably injured, in which case you must award damages for emotional distress, or else he was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum, such as one dollar.

**PRE-DELIBERATION INSTRUCTIONS—CONCLUDING**

**Jury Instruction No. 27**
**(Duty to Deliberate)**

You are about to go into the jury room and begin your deliberations.  It is your duty as jurors to consult with one another and to deliberate with a view to reaching agreement.  Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors.  You should not hesitate to change an opinion when you are convinced that it is wrong.  Your verdict must be unanimous on each and every question that you must decide.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion that in your good conscience appears to be in accordance with the truth.

Copies of the exhibits will be brought into the jury room for your review.  If you want any of the testimony read, you may also request that.  Please remember that it is not always easy to locate what you might want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—or any other communication with the Court— should be made to me in writing, signed by your foreperson, and given to one of the United States Marshals.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

34

### Jury Instruction No. 28
### (Foreperson and Return of Verdict)

When you retire, you should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you in open court.

I have prepared a special verdict form for you to use in recording your decision. The form is made up of questions concerning the issues in this case.    Your answers must be unanimous and must reflect the conscientious judgment of each juror.   You should answer every question except where the verdict form indicates otherwise.

After you have reached a verdict, your foreperson will fill in the verdict form, sign and date it, and advise the United States Marshal outside your door that you are ready to return to the courtroom.